```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                     FORT WORTH DIVISION

AMERICAN AIRLINES, INC.       §
                              §
VS.                           §  CIVIL ACTION NO. 4:12-CV-276-Y
                              §
NATIONAL MEDIATION BOARD      §
```

OPINION AND ORDER

On June 21, 2012, the Court held a bench trial on this matter. Plaintiff American Airlines, Inc. ("American"), and defendant National Mediation Board ("the Board") submitted briefs, filed a stipulation of facts, and presented oral argument. In addition, Communications Workers of America, AFL-CIO, CLC, and Bryan Wall (collectively, "CWA"), after obtaining leave, filed a brief as *amicus curiae*. After careful review of those materials, the Court concludes that the fifty-percent standard set out in Section 2, Twelfth, of the Federal Aviation Administration Modernization and Reform Act of 2012 ("the 2012 Act") governs the Board's conduct in connection with the certification application of CWA. The Court likewise concludes that an injunction to that effect should issue.

I.   Background

On December 7, 2011, the Board received an application from CWA for certification as the duly designated representative of American's passenger-service employees. Under the regulations in effect at the time, an applicant seeking to represent a craft or class of unrepresented employees in a representation dispute had to

accompany its application with a showing of "proved" authorizations from at least thirty-five percent of the employees in the craft or class.

On February 14, 2012, the 2012 Act, which amended the Railway Labor Act ("RLA"), became effective. Section 2, Twelfth, of the 2012 Act changed the showing-of-interest requirement for representation applicants from thirty-five percent to fifty percent of the applicable craft or class:

> The Mediation Board, upon receipt of an application requesting that an organization or individual be certified as the representative of any craft or class of employees, shall not direct an election or use any other method to determine who shall be the representative of such craft or class unless the Mediation Board determines that the application is supported by a showing of interest from not less than 50 percent of the employees in the craft or class.

Pub. L. No. 112-95, § 1003, 126 Stat. 11, 147 (2012) (to be codified at 45 U.S.C. § 152 (12)).

On April 19, 2012, the Board issued an order directing an election to determine the representative of American's passenger-service employees. On April 23, American filed with the Board a motion to reconsider its April 19 decision on the ground that the Board improperly applied the thirty-five percent showing-of-interest standard instead of the 2012 Act's fifty-percent standard. Ultimately, the Board declined to reconsider its decision and

entered an order allowing the election process to proceed.[1]

II. Analysis

The primary issue here is whether the 2012 Act's fifty-percent standard applies to CWA's pending application for certification or the thirty-five percent standard applies. In the Court's view, it is the former.

The plain language of Section 2, Twelfth, of the 2012 Act indicates that the Board cannot direct an election until it has determined that a fifty-percent showing of interest has been made. *See* § 1003, 126 Stat. at 147 ("The Mediation Board . . . shall not direct an election . . . unless the Mediation Board determines that the application is supported by a showing of interest from not less than 50 percent of the employees in the craft or class."). The 2012 Act became effective on February 14, 2012. Thus, when the Board reviewed CWA's application in April 2012, the Board was precluded from ordering an election until a fifty-percent showing of interest had been made.[2] Because the Board's order directing an election was based on the thirty-five percent standard, it must be

---

[1] A more detailed account is set out in the parties' stipulation of facts (doc. 54).

[2] That the thirty-five percent standard was in effect when CWA filed its application is inapposite. The 2012 Act unequivocally governs the prospective conduct of the Board and contains no directives for an organization such as the CWA seeking certification. The Board's argument that applying the fifty-percent standard to CWA's application amounts to an impermissible retroactive application of the statute is unavailing.

3

set aside.[3]

A corollary of this conclusion is that jurisdiction is proper under *Leedom v. Kyne*, 358 U.S. 184, 188-190 (1958). While actions taken by the Board in RLA representation disputes are generally unreviewable under *Switchmen's Union v. NMB*, 320 U.S. 297 (1943), a federal court may intervene where the Board has exceeded its delegated authority and committed a gross violation of the RLA. *See Bhd. of Ry. & S.S. Clerks v. Ass'n for the Benefit of Non-Contract Employees*, 380 U.S. 650, 661 (1965); *see also Russell v. NMB*, 714 F.2d 1332, 1340-41 (5th Cir. 1983) ("[W]here Congress has created a right, the Board cannot destroy that right without intervention by the judiciary. To hold otherwise would rob the [RLA] of its vitality and thwart its purpose." (citation omitted)); *United States v. Feaster*, 410 F.2d 1354, 1368 (5th Cir. 1969) (noting that a court has jurisdiction to strike down a decision of the Board where the decision involved "obvious or gross misapplication of statutory dictates"). Therefore, because the Board misapplied the plain text of Section 2, Twelfth, of the 2012 Act, and thereby acted in excess of its delegated authority, the Court

---

[3] The Board contends that the phrase "upon receipt of an application" in Section 2, Twelfth, signals Congress's intent to have the statute apply only to applications received after the effective date of the statute or, at the very least, creates ambiguity on that point. The Court disagrees. A straightforward reading of the statute yields the conclusion that the "upon receipt" language merely means that applications must be received before a showing-of-interest determination can be made. The language does not suggest that the Board should ignore the statute's fifty-percent standard when reviewing applications submitted prior to February 14, 2012.

has jurisdiction to hear American's challenge to those actions.

Moreover, to give proper effect to the Court's declaration that the 2012 Act prohibits the Board from ordering an election absent a fifty-percent showing of interest, the Court concludes that a permanent injunction is necessary.[4]  "If a statutory violation is involved and the statute by necessary and inescapable reference requires injunctive relief, the movant is not required to prove the injury and public interest factors." *United States v. FDIC*, 881 F.2d 207, 210 (5th Cir. 1989) (citing *Amoco v. Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 (1987)).  In view of this, it is evident that American has met its burden of establishing the appropriateness of a permanent injunction.

III. Conclusion

Based on the foregoing, the Court concludes that American's position prevails.  It is hereby DECLARED that the fifty-percent showing-of-interest standard set out in Section 2, Twelfth, of the 2012 Act governs the Board's conduct in connection with the CWA application.  Additionally, the Board is hereby ENJOINED from directing an election or conducting any of the pre-election activities necessary to hold an election or using any other method

---

[4] CWA, in its amicus brief, contends that Section 4 of the Norris-LaGuardia Act deprives this Court of jurisdiction to enjoin the election.  For the reasons stated in American's response (doc. 55) to CWA's brief, the Court rejects that argument.

to determine who shall be the representative of American's passenger-service employees unless the Board determines that the application is supported by a showing of interest from not less than fifty percent of such employees.

The injunction imposed by this order is narrowly tailored to enforce the language of Section 2, Twelfth, of the 2012 Act and is not as broad as the temporary restraining order previously imposed. The injunction is not intended to affect any employee or organization's rights to organize and seek signed showings of interest from American's passenger-service employees or to prevent the Board from taking any steps consistent with its statutory and regulatory authority to allow additional time for an organization to gather sufficient showings of interest to achieve the fifty-percent requirement.

The temporary restraining order previously entered in this cause is VACATED. While American must post security for the permanent injunction entered by this order in the amount of $10,000, in the interest of efficiency, the cash bond that American previously provided in response to the temporary restraining order is deemed sufficient for and applicable to the permanent injunction.

SIGNED June 22, 2012.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE